IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNA JOHNSTON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | NO. 21-2908 |

**MEMORANDUM OPINION**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                             March 11, 2022

Anna Johnston ("Plaintiff") has sued the United States ("the Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), for injuries she sustained while at Washington Square, which is part of the Independence National Historic Park ("INHP") in Philadelphia. The Government has moved to dismiss this case for lack of jurisdiction, based upon the discretionary function exception, codified at 28 U.S.C. § 2680(a). As explained below, that exception applies herein, hence, this court lacks jurisdiction and the case must be dismissed.

I.      FACTUAL BACKGROUND

Plaintiff alleges that, on December 26, 2018, she was walking in Washington Square when she tripped over a barrier that the National Park Service ("NPS"), an agency of the Government, had placed to protect the grassy area. Complaint ("Comp.") at [3]. According to Plaintiff, the barrier was negligently placed because its footings were off the grassy area and extended onto the park's walkways. *Id.* at [3-4]. She also complains that the NPS placed insufficient notice of the barriers to warn pedestrians of the tripping hazard. *Id.*

Washington Park is one of the five original squares contained in William Penn's survey and design for Philadelphia. Dec. of Eamon Leighty ("Dec.") at [2].[1] Washington Square is a

---

[1] Mr. Leighty states that he has been employed by the BPS and assigned to INHP since 2016; he is the Deputy Chief of Maintenance. Dec. at [1]. In his position, he supervises the grounds, staff and related activities at INHP. *Id.*

green space with turf, trees and other vegetation; it has walkways, the primary ones are 20 feet wide.  *Id.*  Approximately every three years, the turf undergoes restoration.  *Id.*  In the summer of 2018, the NPS began planning for restoration of the turf in the area where Plaintiff fell.  *Id.* at [3].  Based on the best horticultural practices in the American Northeast, the plan was to aerate and reseed in October 2018.  *Id.*  To successfully restore the turf, it was necessary to prevent anyone from walking on it until the Spring of 2019.  *Id.*  Hence, the NPS placed barriers on the walkways to prevent persons from walking on the grass.  *Id.*  The NPS used yellow tape to enhance visibility of the barriers and placed signs with the following admonition:  "PLEASE HELP AREA CLOSED FOR RESTORATION."  *Id.*

In order to protect the restoration process, the barriers were intentionally placed so that their footings were completely on the walkways, not on the grass.  *Id.*  In some areas, because of the angles or turns of the walkways, some of the footings were partially on the grass.  *Id.* at [3-4].  On November 21, 2018, a NPS member took a photograph of the area where Plaintiff would later fall.  *Id.* at 4.  The photograph clearly shows that the footings are on the walkway, not on the grass, and that there is yellow tape between the barriers.  Def.'s Mem. of Law in Support of Mot. to Dismiss at 5.  The photograph shows that there is a sign on one of the barriers, but the angle of the photograph does not permit the sign to be read by the court.

The Government avers that there is no mandatory NPS regulation or policy that governs how turf restoration is to be carried out or how barriers should be placed to protect the restoration process.  Dec. at [4].  It further avers that there is no mandatory NPS regulation or policy concerning how to warn visitors and pedestrians about turf restoration projects.  *Id.*  Hence, as to both of these matters, the NPS employed discretion – guided by what was sensitive, effective and permitted by the available resources – to perform these functions.  *Id.*

## II.    APPLICABLE LEGAL PRINCIPLES

A motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) is either a facial or factual attack. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack concerns a pleading deficiency, whereas a factual attack concerns the failure of the plaintiff's claims "'to comport factually with the jurisdictional prerequisites.'" *Id.* (quoting *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)). The Government's challenge herein is a factual attack, because, as in *CNA*, it challenges whether this court has subject matter jurisdiction, based upon the facts alleged. *See CNA*, 535 F.3d at 139. When considering a factual challenge, the court is empowered to make factual findings that are decisive of the jurisdictional issue. *Id.*

The Government does not contest the fact that Plaintiff satisfies the jurisdictional perquisites found in 28 U.S.C. § 1346(b)(1). Instead, it argues that the discretionary function exception applies. *See* 28 U.S.C. § 2680(a). The Government bears the burden of proving that the exception applies. *Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013) (citing *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008)). The discretionary function exception provides that this court lacks jurisdiction over:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not that statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2860(a). To determine if this exception applies, the court must first identify the Government conduct that is at issue. *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012) (citing *Merando*, 517 F.3d at 165)). Next, the court must determine if the conduct

3

involves "an element of judgment or choice." *Id.* at 333 (citations omitted). If the conduct involves judgment or choice, the final inquiry to determine if "the judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert v. United States*, 499 U.S. 315, 322-23 (1991) (citations omitted). The reason for this inquiry is that:

> the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, . . . when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy.

*Id.* at 323 (citations omitted). The focus of the inquiry is:

> not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Id.* at 325.

### III. FINDINGS AND CONCLUSIONS

The dispute in this case is not over whether Plaintiff has properly pled a claim under the FTCA. Instead, the dispute is over whether the discretionary function exception applies. This court finds that it does.

First, the relevant conduct is the Government's decision to restore the turf at Washington Square, which it chose to protect by the use of barriers. In order to maximize protection of the restoration, the barriers' footings were intentionally placed on the walkways that visitors and the public would use. This use of the barriers created a tripping risk, hence the Government used yellow tape between barriers and signs to warn the public.

Plaintiff does not dispute that the relevant conduct was subject to discretion. Pl.'s Mem. of Law in Support of Pl.'s Resp. at [5]. This satisfies the first requirement for application of the discretionary function exception. *See, e.g., S.R.P.*, 676 F.3d at 333. Hence, the only question

which remains is whether the decisions the Government made were based upon social, political or economic policy. *See Gaubert*, 499 U.S. at 323.

The discretionary decision to carry out the turf restoration at Washington Square required considerations of social and economic policy. For one, balancing the cost of the project against all the other needs at INHP is inherently an economic policy decision. Furthermore, deciding how to balance the need to have a successful restoration, while still allowing the public to use Washington Square is a policy decision. *See Merando*, 517 F.3d at 172 (explaining that it a policy decision existed when, in light of its limited resources, the NPS staff had to balance visitor safety with visitor enjoyment and conservation of the park at issue).

Next, placing the barriers' footings on the walkways, instead of on the grass, involved the intersection of economic and social policy. Putting the barrier footings on the walkway, rather than on the grass, was designed to maximize the economic benefit of seeding by enhancing the probability that the restoration would succeed and, thereby, avoid necessity of repeating the restoration process sooner. Of course, placing the footings on the walkways caused a tripping risk for pedestrians. Creating that risk and attempting to ameliorate it by use of the yellow tape and signage was a policy decision, inasmuch as, in light of staffing limitations, it balanced the public's desire to use Washington Square against the need to protect the public from the tripping risk. This is the type of policy decision that has been found sufficient to satisfy the second part of the discretionary function exception test. *Merando*, 517 F.3d at 172.

In short, the Government's challenged conduct was "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. Hence, the discretionary function exception applies and this court lacks jurisdiction. *Id.*

An implementing order follows.